[1] This is an appeal from an order of the Circuit Court of Barry County, Missouri, modifying the decree of divorce, entered in that court on April 3, 1946. The defendant in that divorce case is respondent in this case.
[2] Respondent, when defendant in the divorce case, did not appear therein, and made default, although present in the court room at the time the case was heard. Appellant was then granted a divorce and the trial court, in that case and at that time, made the following order regarding the care and custody of the child born of such marriage:
[3] "It is further ordered, adjudged and decreed by the Court that plaintiff herein be and is hereby awarded the care and custody of the minor child born of the marriage aforesaid, Barbara Cecil McPhail, a girl, now 5 years of age, nine and one-half (9 1/2) months during school term and that the defendant herein be and is hereby awarded the care and custody of said child during the school vacation. The right of visitation of said child is hereby awarded both plaintiff and defendant at any reasonable time during the entire year."
[4] That divorce decree was sought to be modified by respondent on February 15, 1949. On March 21, 1949, appellant filed his answer to such motion. On March 24, 1949, respondent filed her reply to appellant's answer.
[5] On April 21, 1949, the trial court entered the following judgment, a portion of which is as follows: "Now on this 21st day of April, 1949, * * * does hereby find that there is just grounds and sufficient change of social and financial conditions between the parties, for the modification of the prior decree and that said decree should be modified, in that the defendant have the legal care and custody of the minor child for ten months of each year, beginning June 1, 1949, with the plaintiff having care and custody of said minor child during July and August of each year, beginning with 1950 and thereafter, together with the privilege of having the child during Christmas vacations, beginning in 1949. That the plaintiff shall pay all costs of transportation to and from the place of custody of the child at all such times as he may be entitled to the custody under this decree."
[6] Appellant thereafter filed his motion for a new trial, and same was overruled. On April 25, 1949, he filed his notice of appeal to this Court.
[7] The evidence shows that Barbara Cecil McPhail was the eight-year old daughter of appellant and respondent. Both parties to the original divorce case have since remarried. Respondent is now Dolly McPhail Houghtelling. Her present husband has also been divorced. He had three children, all boys, four, seven and nine years of age, living with his former wife in Nebraska, most of the time. Appellant has been married twice since his marriage with respondent, and now lives in Wichita, Kansas. He was twenty-nine years of age when the motion to modify the divorce decree was heard. Respondent was then living with her present husband, Houghtelling, at Carthage, Missouri. *Page 164 
[8] It seems that respondent married her present husband April 1, 1946, and again on March 31, 1947. She testified that she was married to her present husband, thinking that she was lawfully divorced from appellant at that time. She said she thought all the time that she was legally married to Houghtelling, until March 31, 1947, when she first sought to modify the divorce decree. She then found for the first time that she was not legally married to Houghtelling. She immediately was remarried to him. She said that she thought that the divorce to appellant was granted on March 18th of that year. She met Houghtelling, while appellant was in the United States Army, and planned her marriage to Houghtelling before appellant returned to this country.
[9] One Ed Daniels, the stepfather of respondent, testified to the good character and sobriety of Houghtelling. Nothing to the contrary appears in the record.
[10] Appellant testified that he was remarried on June 7, 1946. That marriage ended in a divorce on April 21, of the next year, on the petition of his then wife, and without resistance on his part.
[11] It was after the separation of appellant from his second wife that he took the child down to his parents, and he testified that the child was supported by him there, and that she goes to school at Purdy, Missouri. Appellant married his present wife on July 24, 1948. They went to Wichita, Kansas, to live and he did not take the child with him. Appellant said that he did not find respondent at home when he tried to visit the child at her home. Appellant testified that he would be glad to take the child to his home in Wichita, Kansas, if the court would consent to his so doing. He said that he had taken good care of her health. The parents, to whom he referred, were farmers.
[12] On cross examination, appellant said the reasons why he had not taken his daughter to Wichita, Kansas, were that he did not think he could take her out of the jurisdiction of the court, and that he did not want to interrupt her schooling. He did not claim to have had exact knowledge of her physical or dental condition at any time.
[13] Appellant's wife, Betty McPhail, testified to her willingness to have the child of appellant in her home. She was expecting a baby of her own in the May following.
[14] Nellie McPhail testified that she was fifty-seven years old, the mother of appellant and the grandmother of the child. She said that her own health was good, and that she did a lot of hard work, and loved Barbara, the child, like one of her own children. She took her to Sunday School and Church. She said the child went to school regularly and enjoyed good health. She said that she took the child to a doctor, when the child needed it. She said the child had sufficient clothing and that appellant furnished her plenty of money for the child. She further testified that the child seemed to like appellant's present wife and that the feeling was mutual. She testified that the child seemed to be happy with her paternal grandparents.
[15] The father of appellant, who was then sixty-four years of age, testified to practically the same things to which his wife testified, and also testified to appellant's good character.
[16] Dr. Baldwin was called by appellant and testified concerning the good health of the child; but said that she should have her tonsils and adenoids removed. He had extracted one tooth for her, and said that she had about arrived at the age when she would lose all of her baby teeth.
[17] Barbara's school teacher was also called as a witness by appellant. Her testimony tended to show that Barbara attended school regularly and that she was settled in her work.
[18] Appellant also called a number of other witnesses to testify to the good character of the paternal grandparents, and to their regularity in church attendance. There was no evidence to the contrary.
[19] At the conclusion of the testimony the trial judge announced a continuance of the case for a week, in order that he might hear the testimony of the child herself. Before talking to the child, the following agreement was made by counsel on both *Page 165 
sides: "Whereupon, in private chambers in the presence of the Clerk of the Circuit Court, the reporter, Mr. E. C. Medlin, counsel for plaintiff, and Mr. Jerry Graves, counsel for defendant, the Court examined Barbara Cecil McPhail."
[20] The examination of the child was made by the trial judge, without the oral participation of counsel for either party, though they were probably present during all of such examination of the child by the trial judge.
[21] We cannot refrain from commending the action of the trial judge, in having a child of that age tell her story to him, rather than to listen entirely to the testimony of others. This is one of those unfortunate cases where a child, born of a failed marriage, must suffer more than its parents, regardless of where the fault lies.
[22] Immediately after talking with the child, the trial judge announced his conclusion, as follows: "By The Court: With all due respect to the parties involved in this case and any stepmother, I think we will admit that experience shows that a stepmother can never bring the same love and care and devotion and affection to a stepchild that the natural mother can. Consequently it is the feeling of this Court from the facts brought out in evidence here and under the decisions of the appellate courts that this suit must of necessity require a modification of the decree."
[23] On April 21, 1949, the trial court made and entered the following order: "Now Therefore It Is Hereby Ordered, Adjudged and Decreed that the defendant's motion to modify said decree is hereby sustained and that the care and custody of the minor child, Barbara Cecil McPhail, is awarded to the natural mother, Dolly McPhail Houghtelling, beginning June 1, 1949, and that the natural father of the child, Don McPhail, is to have the care and custody of the minor child during the months of July and August, beginning in 1950, and each year thereafter, and during the mid-winter vacation, the Christmas holidays, beginning in December, 1949, and each year thereafter, and said Don McPhail is to arrange for transportation of said child at such times, at his expense, to and from his home and to and from the home of the said natural mother."
[24] Upon the overruling of his motion for a new trial, plaintiff, in the original divorce case, appealed to this Court, and, as appellant here, he cites Salkey v. Salkey, Mo. App. 80 S.W.2d 735, and Morgens v. Morgens, Mo.App. 164 S.W.2d 626.
[25] We do not question the proposition, asserted by appellant, that the welfare of the child is superior to the claim of either parent. It seems to us that, after listening to all of the testimony in the case and having a heart to heart talk with the child herself, the trial judge sufficiently answered this proposition from his conclusion, which we have cited.
[26] Appellant cites Foster v. Foster, Mo.App., 146 S.W.2d 849, 850. In that case, by the Kansas City Court of Appeals, Judge Bland said: "The true theory upon which the rule requiring a showing of new facts or changed conditions rests upon the doctrine of res adjudicata." That was a motion to modify the original decree in a divorce case. Judge Bland then cited a number of cases purporting to rule as he did.
[27] We do not take exception to those cases, or to the rule laid down therein, but we are satisfied that the conditions in this case are shown to have been changed greatly, from April 3, 1946, until the motion to modify the decree was sustained.
[28] When appellant secured the divorce from respondent, he lived in Missouri, and, when he married his third wife, he was compelled to leave the child with his parents, who were both elderly and apparently had raised their own children. In the meantime, respondent had remarried and lived in Carthage, Missouri, and her present husband seems to have furnished her with a good home and together they have saved some money.
[29] We cannot blame respondent for the mistake she apparently made in marrying her present husband before the divorce to appellant was granted. She did all she could do to rectify that mistake, after she found out about her error. *Page 166 
[30] Appellant's present wife, doubtless a good woman herself, was expecting the arrival of a child. Even if appellant was allowed to take his child to Wichita, Kansas, it is not altogether certain that his wife would furnish her stepdaughter a good home, after she had a child of her own to care for.
[31] We are constrained to hold that conditions have radically changed since the original divorce decree.
[32] In his brief appellant says: "The respondent failed to have her present husband testify; by reason of which a strong presumption arises that his testimony would have been adverse to respondent," and cites cases which appellant claims support the contention there made. We have examined those cases and they do not decide the point, just as appellant claims.
[33] In McNicholas v. Continental Baking Company, 112 S.W.2d 849, 855, the St. Louis Court of Appeals recognized the rule contended for by appellant, but held that it did not apply to that case.
[34] That was a case where plaintiff therein claimed to have been injured by glass in bread. McCullen, Judge, after recognizing the application of the rule in some cases, said: "However, that principle does not authorize this court to usurp the function of the jury. In the case at bar plaintiff produced evidence, which, if believed, authorized a verdict in his favor, and, while his failure to produce the testimony and evidence referred to by defendant would afford a basis for argument to the jury against plaintiff's case and would authorize the jury to draw inferences unfavorable to plaintiff, nevertheless it could not have the effect of completely destroying and overcoming the positive testimony and evidence which plaintiff did produce."
[35] We have also examined Feigenbaum v. Bockrath, Mo.App., 191 S.W.2d 999, and Russell v. Franks, 343 Mo. 159, 120 S.W.2d 37, cited by appellant. None of those cases go any further than to state that, where it appears that someone whom a party to the suit could readily have called as a witness, and such other person had knowledge of facts damaging to him and such party to the law suit, failed to call him as a witness, the trier of the facts could presume that the testimony of such witness would have been unfavorable to the party failing to call him.
[36] That rule has no application here. The trial court could not assume that the failure of respondent to call her husband as a witness, when he was not shown to have had any knowledge whatever, except as to the character of respondent, raised a presumption that his evidence would have been unfavorable to respondent.
[37] We have carefully examined all of the assignments of error made in appellant's brief, and have concluded that the trial court had the right to modify the previous decree in the divorce case between appellant and respondent.
[38] The judgment is affirmed.
[39] VANDEVENTER, P. J., and McDOWELL, J., concur.